UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

```
-------------------------------------------------------X
GREGORY A. BLOCH, ANNE C. BLOCH,:
GREGORY A. BLOCH, ANNE C. BLOCH :
as TRUSTEES FOR THE BENEFIT OF      :
TRIAD ART GROUP, INC.'S EMPLOYEE:
STOCK OWNERSHIP TRUST, ANNE C.  :
BLOCH as CUSTODIAN FOR THE          :
BENEFIT OF LUCAS CRETZMEYER,      :
TRIAD ART GROUP, INC.,              :
TRIAD ART GROUP PUBLISHING, INC.,:

                    Plaintiffs,       :

VS.                                   :

FINANCIAL WEST GROUP, and.          :
PATRICK SAHLI,                        :

                    Defendants.       :
-------------------------------------------------------X
```

CIVIL ACTION NO. 303-CV-0368
MRK

October 9, 2003

FILED
Oct 14 11 07 AM '03
U.S. DISTRICT COURT
NEW HAVEN, CONN.

## AFFIDAVIT OF DIANNA D. MCCARTHY

I, Dianna D. McCarthy, being duly sworn, hereby state as follows:

1.  I am over the age of 18 years and believe in the obligations of an oath.

2.  I am a member of the law firm Winget, Spadafora & Schwartzberg, LLP and I represent the Defendant Financial West Group ("FWG"), in the above-captioned action.

3.     On or about February 27, 2003 the Plaintiffs initiated this action by filing their Complaint. A true and accurate copy of the Plaintiffs' Complaint is annexed hereto as Exhibit "A."

4.     On or about July 22, 2003 Plaintiffs served their First Set of Interrogatories and Requests for Production on FWG. A true and accurate copy of the Plaintiffs' First Set of Interrogatories and Requests for Production is annexed hereto as Exhibit "B."

5.     On or about September 12, 2003 FWG substantially complied with the Plaintiffs' Discovery Demands and produced documents bearing Bates Stamp Nos. 000000 – 000465.

6.     On or about September 12, 2003 FWG produced documents responsive to Interrogatory No. 12, bearing Bates Stamp Nos. 000059 – 000066.

7.     A proposed Protective Order and Order of Confidentiality are annexed hereto as Exhibits "C."

8. Pursuant to Rule 37 of the Local Rules of this Court, I conferred with opposing counsel and discussed in detail this discovery dispute in a good faith effort to eliminate or reduce the area of controversy between us prior to filing this motion with the Court. Despite the good faith efforts of counsel, we have been unable to resolve this discovery dispute without this Court's intervention.

Dated: October 9, 2003

WINGET, SPADAFORA &
SCHWARTZBERG ,LLP
Attorneys for Defendant
Financial West Group

By:                

            Dianna D. McCarthy (ct24874)
            45 Broadway, 19th Floor
            New York, New York 10006
            Phone: (212) 221-6900
            Fax: (212) 221-6989
            spadafora.l@wssllp.com

Subscribed and sworn to before me this 9th day of October , 2003.

Notary Public
My Commission Expires:

LISA MARIE MITCHEM
*NOTARY PUBLIC*
MY COMMISSION EXPIRES FEB. 28, 2006

## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

# FILED

--------------------------------------X

**GREGORY A. BLOCH, ANNE C. BLOCH,**
**GREGORY A. BLOCH, ANNE C. BLOCH**
**as TRUSTEES FOR THE BENEFIT OF**
**TRIAD ART GROUP, INC.'S EMPLOYEE**
**STOCK OWNERSHIP TRUST, ANNE C.**
**BLOCH as CUSTODIAN FOR THE**
**BENEFIT OF LUCAS CRETZMEYER,**
**TRIAD ART GROUP, INC.,**
**TRIAD ART GROUP**
**PUBLISHING, INC.,**

Plaintiffs,

v.

**FINANCIAL WEST GROUP, and**
**PATRICK SAELI,**

Defendants.

--------------------------------------X

2003 MAR -3  A 9 45

US DISTRICT COURT
BRIDGEPORT CT

 

CIVIL ACTION NO.

303CV0368 RNC

February 27, 2003

## COMPLAINT



Plaintiffs, Gregory A. Bloch and Anne C. Bloch, individually and as trustees for the benefit of Triad Art Group, Inc.'s Employee Stock Ownership Trust, plaintiff Anne C. Bloch as custodian for the benefit of Lucas Cretzmeyer, plaintiff Triad Art Group, Inc. ("Triad Art Group") and plaintiff Triad Art Group Publishing, Inc. ("Triad Art Publishing") (hereinafter individually and collectively referred to as "Plaintiffs"), by their attorneys, Day, Berry & Howard, LLP, allege as follows:

1.      This is an action asserting various claims stemming from the sale of securities by the Defendants to the Plaintiffs. Those claims include fraudulent misrepresentation, negligent

misrepresentation, breach of fiduciary duty, negligent supervision, violations of the Securities
and Exchange Act of 1934 (the "Exchange Act"), and violations of the Connecticut Uniform
Securities Act.

### Parties

2.      At all times relevant to the allegations contained in this Complaint, Plaintiffs
Gregory A. Bloch and Anne C. Bloch resided at 73 Wynnewood Lane, Stamford, State of
Connecticut.

3.      At all times relevant to the allegations contained in this Complaint, Plaintiff Triad
Art Group, Inc. is a Connecticut corporation with its principal place of business at 73
Wynnewood Lane, Stamford, CT 06903.

4.      At all times relevant to the allegations contained in this Complaint, Plaintiff Triad
Arts Group Publishing, Inc. is a Nevada corporation with its principal place of business at 73
Wynnewood Lane, Stamford, CT 06903.

5.      At all times relevant to the allegations contained in this Complaint, Defendant
Financial West Group, Inc. ("Financial West") was and is a California corporation, with its
principal place of business at 2663 Townsgate Road, Westlake Village, State of California.

6.      Upon information and belief, and at all times relevant to the allegations contained
in this Complaint, Defendant Patrick Sahli ("Sahli") was and is a resident of the State of
California and was acting as an agent of Financial West.

711704212

## Jurisdiction and Venue

7.       The Court has jurisdiction over this action pursuant to 28 U.S.C. 1332(a) in that there is diversity among the parties and the amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs.  This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because a claim herein arises under Section 27 of the Exchange Act, as amended, 15 U.S.C. § 78aa1(1).  This Court also has jurisdiction over the state law claims set forth herein pursuant to the principles of supplemental jurisdiction under 28 U.S.C. § 1367.

8.       Venue is proper in this Court pursuant to 28 U.S.C. § 1391 in that a substantial part of the events and omissions giving rise to the claims herein occurred in this district and defendants are subject to personal jurisdiction in this district as of the commencement of this action.

## Facts

9.       Financial West is a securities broker-dealer and investment advisor which, upon information and belief, has approximately 460 registered representatives located in sales office throughout the country.

10.      Sahli is an investment advisor and, at all times relevant to the allegations contained in this Complaint, was a registered representative of Financial West.

11.      At all times relevant to the allegations contained in this Complaint, Defendant Sahli was an agent for Defendant Financial West, and was acting for, on behalf of and with the authority of Financial West.

711190(2) 2

-3-

APR 15 2003 14:23  FR                    212 458 1039 TO 912122216989    P.05/19
Case 3:03-cv-00368-MRK    Document 25    Filed 10/14/2003    Page 7 of 51
MAR-31-2003  12:52

P.05

12.    Plaintiff Gregory Bloch is a fifty-five (55) year old art dealer and publisher of art books.  Plaintiff Anne Bloch is the wife of Gregory Bloch.

13.    Plaintiff Triad Art Group, Inc. is in the business of buying and selling art and is wholly-owned by plaintiffs Gregory and Anne Bloch.

14.    Plaintiff Triad Art Group Publishing, Inc. is in the business of buying, selling and publishing art and is wholly-owned by plaintiffs Gregory and Anne Bloch.

15.    Beginning in 1997, the Plaintiffs invested substantial monies into various accounts handled by Sahli and Financial West.

16.    In early 2001, the Plaintiffs explained to Sahli that they were looking to invest and/or transfer additional monies into a very conservative product or fund where their invested principal would be guaranteed and a set rate of return also would be guaranteed.

17.    In response to that request, Sahli called Gregory Bloch and informed him that he had found a Goldman Sachs investment product, called the High Yield Income Fund (the "Income Fund"), which guarantees one-hundred percent (100%) of the principal of any invested monies and provides a guaranteed interest rate of 7.291% annually.  Sahli also informed Plaintiff Gregory Bloch that Plaintiffs would not be charged any exit fees if they chose at any time to withdraw monies from the Income Fund.

18.    On or about January 23, 2001, based on Sahli's representations as described above, and in reliance on those representations, Plaintiffs' Gregory and Anne Bloch provided $605,060.16 to Sahli to be invested by them as trustees for the benefit of Triad Art Group's Employee Stock Ownership Trust in a Goldman Sachs Income Fund account.  Sahli, through his

71176421 2

-4-

relationship with and as an agent for Financial West, opened an account on behalf of Plaintiffs and invested their monies into the Goldman Sachs Income Fund.

19.     During 2001, based on Sahli's representations as described above, and in reliance on those representations, Plaintiffs transferred various sums from their other Financial West accounts and invested additional amounts in the Income Fund.

20.     Those transfers were made by Anne Bloch as custodian for the benefit of Lucas Cretzmeyer, and by Gregory and Anne Bloch as trustees for the benefit of Triad Art Group and totaled approximately $45,000.00.

21.     Throughout 2001, Sahli repeatedly assured Plaintiffs, both orally and in writing, that their principal and rate of return were guaranteed.

22.     For example, in an e-mail dated July 18, 2001, Sahli explained a credit that would be made to the Plaintiffs' account and stated that the credit "is being returned to the Goldman Sachs portfolio earning 7.29%."

23.     In addition, Sahli repeatedly informed Plaintiff Gregory Bloch that any withdrawals by him from the Income Fund would not be charged exit fees because of the large amount of money Plaintiffs had invested in the Income Fund.

24.     In January 2002, based on Sahli's representations as to the guaranteed principal, the guaranteed rate of return and the promised waiver of any exit fees, Plaintiffs Triad Art Group and Triad Art Publishing provided an additional $675,000.00 and $50,000.00, respectively, to Sahli to be invested in the Income Fund. Again, Sahli, through his relationship with and as an agent for Financial West, invested those monies into the Income Fund.

71330421 2

25.    In February 2002, Plaintiffs received a monthly statement reflecting their $675,000 investment in the Income Fund.  That statement reflected that their account had a balance of approximately $658,000.00, only one month after investing $675,000 into the fund.

26.    Upon review of the February 2002 statement, Plaintiff Gregory Bloch called Sahli to discuss why his Income Fund account reflected a balance of less than their initial investment when, as Sahli had repeatedly informed Plaintiffs, the Income Fund had been described as providing a guaranteed 7.291% annual return on their investment.

27.    In response, Sahli repeated his representations to Plaintiff Gregory Bloch about the guaranteed principal and guaranteed rate of return and told him "not to worry," that the February statement did not reflect the actual value of his account.  Sahli told him that the statement merely reflected some "valuation discrepancies."  Sahli once again represented that Plaintiffs could withdraw their money at any time and that, upon withdrawal, they would receive the return of all of their principal plus interest at the annual rate of 7.291%.

28.    On April 16, 2002, Defendant Sahli wrote to Plaintiffs to provide "historical and current data on each of your investments in Goldman Sachs' Senior Corporate Note Portfolio and interest earned."  (A copy of the April 16, 2002 letter is attached as Exhibit A.)

29.    In that letter, Sahli reviewed each of the Plaintiffs' accounts and explained the fluctuations reflected in the statements they had received.

30.    For each account, Sahli provided a total amount, which he stated reflects the "actual [value] if liquidated now."  Sahli represented in writing that the "actual value" of each

711704212

-6-

APR 15 2003 14:23 FR                    212 458 1039 TO 912122216989          P.08/19
MAR-03-2003 03-cv-00368-MRK    Document 25    Filed 10/14/2003    Page 11 of 51

P.08

account was the original principal amount invested, plus an interest amount that reflected a 7.291% annual rate of return.

31.     Sahli then calculated the difference between his "actual [value] if liquidated now" and the value shown on each of Plaintiffs' account statements as of April 15, 2002. He stated that the daily values shown on each account statement "are best estimates only" because the securities in the Goldman Sachs Income Fund are not traded daily. He explained that the "best estimates [on the account statements] ... may be slightly below or above the actual values, which are fixed, and not subject to market fluctuations."

32.     Sahli concluded that letter with the following statement: "The net of all this, Greg and Anne, is that your original investment of a dollar remains at one hundred cents at all times and will not rise or fall, plus the accrued interest set at 7.291% annually, or .000202528% daily."

33.     Notably, Sahli did not mention any exit fees when providing the "actual [value] if liquidated now."

34.     During the first half of 2002, based on Sahli's representations as described above, and in reliance on those representations, Plaintiffs transferred various sums from their other Financial West accounts and invested additional amounts in the Income Fund.

35.     Those transfers were made by Anne Bloch as custodian for the benefit of Lucas Cretzmeyer, by Gregory and Anne Bloch as trustees for the benefit of Triad Art Group, and by Gregory and Anne jointly and totaled approximately $26,000.00.

36.     In addition, on or about May 24, 2002, Plaintiffs sold the shares in the Income Fund that they had purchased with the $50,000.00 that they had invested in January 2002.

71178421 2

-7-

APR 15 2003 14:24 FR                         212 458 1038 TO 912122216989    P.09/19
MAR-31 2003 12:53    Case 3:03-cv-00368-MRK    Document 25    Filed 10/14/2003    Page 12 of 51

P.09

37.    Upon the sale of the shares, Plaintiffs received a payment of $51,507.58 which was represented by Sahli as a return of the principal plus interest at an annual rate of return of 7.291%. In addition, they were not charged any exit fees.

38.    Thus, Plaintiffs were reassured that Sahli's representations were accurate.

39.    In the Summer of 2002, again as a result of and in reliance on Sahli's representations as described above, Triad Art Publishing provided an additional $450,042.38 and $51,507.58 to Sahli to be invested in the Income Fund.

40.    Also in the Summer of 2002, again as a result of and in reliance on Sahli's representations, Plaintiffs invested additional monies into the Income Fund and asked Sahli to transfer all of the monies they held in other Financial West accounts into the Goldman Sachs Income Fund. The amount of such additional investments and transfers totaled slightly under $800,000.00.

41.    Those transfers included investments by Gregory Bloch individually, by Anne Bloch individually and as custodian for the benefit of Lucas Cretzmeyer, by Gregory and Anne Bloch jointly and as trustees for the benefit of Triad Art Group

42.    Thus, by the end of the Summer of 2002, Plaintiffs had close to $2.5 million dollars invested by Sahli and Financial West in the Income Fund.

43.    In or about September 2002, Plaintiffs Gregory and Anne Bloch were evaluating various financial issues, including the potential purchase of a new home. At that time, they asked Sahli to provide them with the current value of their Income Fund holdings. In response,

71170421 2

in a letter dated October 1, 2002, Sahli listed the Plaintiffs' accounts and what "each would be worth if you were to liquidate them immediately."

44.    Again, Sahli described each account as having the original principal amount invested and interest earned that reflected approximately a 7.291% annual rate of return.

45.    Moreover, again Sahli did not mention any exit fees for immediate liquidation of the Plaintiffs' accounts. Indeed, the only reference to any fees was a note by Sahli that the Individual Retirement Accounts are "subject to less than $50 in termination fees each, which I exclude for our purposes here."

46.    On October 28, 2002, Plaintiff Gregory Bloch instructed Sahli to liquidate $100,000.00 from one of his Income Fund accounts. After the liquidation, Plaintiffs received a check in the amount of $86,374.24.

47.    Upon receipt of the $86,374.24 check, Plaintiff Gregory Bloch telephoned Sahli to inquire as to why he did not receive the full principal amount plus the guaranteed rate of return.

48.    Sahli told Plaintiff Gregory Bloch, in sum and substance, "not to worry." Sahli promised Gregory Bloch that Goldman Sachs would forward to him the balance of the principal plus the guaranteed return by the beginning of the next month.

49.    Goldman Sachs, however, did not forward the balance due the Plaintiffs.

50.    In or about November 2002, Plaintiff Gregory Bloch again telephoned Sahli to inquire about the balance due him. During that conversation, Sahli told Plaintiff Gregory Bloch,

711190421 2

-9-

that Sahli was "no longer handling his account" and was no longer acting as an agent of Financial West.

51.    Plaintiff Gregory Bloch then telephoned Financial West and was told that Sahli had been terminated from his position as a registered representative with Financial West.

52.    Upon further inquiry about the status of his investments and the promises and representations that Sahli had made to him, Financial West informed Plaintiff Gregory Bloch that the Income Fund does not guarantee the principal investment, nor does it guarantee a 7.291% return.

53.    Upon learning of Sahli's misrepresentations and his termination as a registered representative for Financial West, Plaintiffs liquidated their accounts with Financial West.

54.    Upon closing of those transactions, Plaintiffs did not receive 100% of the principal of the invested monies.

55.    Moreover, Plaintiffs' investment did not earn the guaranteed 7.291% that had been promised to Plaintiffs.

56.    In fact, Financial West forwarded Plaintiffs wire transfers in the total amount of $1,931,738.00. Pursuant to Sahli's representations as an agent for Financial West, Plaintiffs should have received payments in an amount not less than $2,290,472.00.

57.    In addition, contrary to all of Defendant Sahli's representations to Plaintiffs that they would not be charged any exit fees, Goldman Sachs charged the Plaintiffs exit fees upon liquidation of their accounts in the amount of $35,727.32.

711704212

58.    Thus, Plaintiffs lost in excess of $358,734.00 as a result of Defendants misrepresentations to them.

## Count I – Fraudulent Misrepresentation as to Both Defendants

59.    Plaintiffs incorporate by reference the above paragraphs 1 through 58 as if fully set forth herein.

60.    During the discussions with Plaintiffs regarding the Income Fund account, Defendant Sahli, individually and as an agent of Defendant Financial West, made the following representations in oral and written communications to Plaintiffs:

    a.    that Plaintiffs' investment in the Income Fund was guaranteed and that his principal amount would never decrease;

    b.    that Plaintiffs' cash investment in the Income Fund had a guaranteed annual rate of return of 7.291%; and

    c.    that Plaintiffs would not be charged any exit fees on their investment in the Income Fund because of the large amount that they had invested in that fund.

61.    Each of the aforementioned representations made by Defendant Sahli, individually and as an agent of Defendant Financial West, was false, and Defendant Sahli knew each representation was false at the time he made it.

62.    Defendant Sahli, individually and as an agent of Defendant Financial West, made each of the aforementioned representations and omissions in bad faith and intending that

71170421 2

-11-

Plaintiffs rely upon such representations in deciding to purchase shares in the Goldman Sachs Income Fund.

63.     Each representation and each omission made by Defendant Sahli, individually and as an agent of Defendant Financial West, was material to Plaintiffs' decision to purchase shares in the Goldman Sachs Income Fund.

64.     Plaintiffs reasonably relied upon each representation made by Defendant Sahli in deciding to invest in the Goldman Sachs Income Fund.

65.     As a direct result of each fraudulent misrepresentation by Defendants, Plaintiffs have sustained damages in excess of $358,734.00.

## Count II – Negligent Misrepresentation as to Both Defendants

66.     Plaintiffs incorporate by reference the above paragraphs 1 through 65 as if fully set forth herein.

67.     Defendant Sahli, individually and as an agent of Defendant Financial West, made the representations to Plaintiffs as described above in the course of his business and because of his pecuniary interest.

68.     Defendants failed to exercise reasonable care and competence in determining whether the representations made to Plaintiffs were true or false.

69.     The representations made to Plaintiffs proved to be false.

71196421 2

-12-

APR 15 2003 14:25 FR                    212 458 1039 TO 912122216989    P.14/19
MAR-31-2003  12:54  Case 3:03-cv-00368-MRK    Document 25    Filed 10/14/2003    Page 17 of 51

P.14

70.     Defendants negligently made these representations for the purpose of having Plaintiffs rely on them in a particular business transaction, namely Plaintiffs' decision to invest in the Goldman Sachs Income Fund.

71.     Plaintiffs justifiably relied on the representations and information provided by Defendants.

72.     As a result of Plaintiffs' reliance on the false representations of Defendants, Plaintiffs suffered pecuniary loss in an amount in excess of $358,734.00.

## Count III – Breach of Fiduciary Duty as to Both Defendants

73.     Plaintiffs incorporate by reference the above paragraphs 1 through 72 as if fully set forth herein.

74.     Defendants Sahli and Financial West owed a fiduciary duty to Plaintiffs in their respective capacities as registered representative, investment advisor and broker-dealer.

75.     The fiduciary duties Defendants owed to Plaintiffs, included, without limitation:

a.      the duty to refrain from making false or misleading representations to Plaintiffs regarding their investment in the Income Fund;

b.      the duty to provide the Plaintiffs with accurate information regarding all material aspects of the Income Fund;

c.      the duty to act with loyalty and good faith towards Plaintiffs in the discharge of their investment functions;

71170-21 2

d. the duty to provide Plaintiffs with suitable investment advice based on Plaintiffs' stated investment objectives,

76. Defendants breached their fiduciary duties to Plaintiffs by:

a. investing Plaintiffs monies in a fund that did not guarantee the principal and rate of return, contrary to what Defendant Sahli, individually and as an agent of Defendant Financial West, had represented to Plaintiffs;

b. failing to discharge their duties in good faith with the care an ordinarily prudent person in a like position would exercise under similar circumstances;

c. failing to provide Plaintiffs with suitable investment advice;

d. failing to provide Plaintiffs with accurate and truthful information regarding the Income Fund.

77. Defendants actions were done in bad faith, without information or disclosure to Plaintiffs, and for Defendants own financial gain, all to the detriment of Plaintiffs.

78. As a direct and proximate result of the breaches of fiduciary duty by Defendants, Plaintiffs sustained damages in excess of $358,734.00.

711170421 3

## Count IV – Negligent Supervision as to Defendant Financial West

79.    Plaintiffs incorporate by reference the above paragraphs 1 through 78 as if fully set forth herein.

80.    Defendant Financial West had a duty to adequately train and supervise Defendant Sahli, who was a registered representative for Financial West.

81.    Defendant Financial West failed to properly train and supervise Defendant Sahli in his duties as a registered representative for Financial West.

82.    Defendant Financial West's failure to properly train and supervise Defendant Sahli caused Plaintiffs to suffer damages.

83.    As a direct and proximate result of Defendant Financial West's failure to properly train and supervise Defendant Sahli, Plaintiffs sustained damages in excess of $358,734.00.

## Count V – Violation of Section 20(a) and Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder as to Both Defendants

84.    Plaintiffs incorporate by reference the above paragraphs 1 through 83 as if fully set forth herein.

85.    Defendant Sahli, individually and as an agent of Defendant Financial West, offered and sold Plaintiffs shares in the Income Fund.

86.    Defendant Sahli, by use of means and instrumentalities of transportation and communication in interstate commerce and/or the mails, with scienter, made untrue statements of material facts and failed to disclose material facts necessary in order to make statements made

71170431 2

-15-

about the Income Fund, in light of the circumstances under which they were made, not misleading. Defendant Sahli's communications included untrue statements, misrepresentations and omissions of material facts and information relating to the sale of this security, as more fully set forth in Paragraphs 9 through 58 of this Complaint.

87. Defendant Sahli's untrue statements, misrepresentations and omissions of material facts rendered his statements and communications regarding the Income Fund misleading.

88. Plaintiffs did not know that these statements and communications by Defendant Sahli were untrue and misrepresentative, nor that the statements and communications omitted material facts and information.

89. Plaintiffs justifiably relied on Defendant Sahli's misrepresentations or omissions in deciding to invest in the Income Fund.

90. Plaintiffs suffered a monetary loss as a result of Defendant Sahli's misrepresentations or omissions.

91. Defendant Sahli's statements, communications, misrepresentations and omissions constitute violations of Section 10(b) of the Securities Exchange Act of 1934 (15 U.S.C.A. § 78j(b)) and Rule 10b-5 (17 C.F.R. 240.10b-5) promulgated thereunder.

92. Defendant Financial West, through its positions of control and authority over Defendant Sahli, was able or should have been able to control, directly or indirectly, the statements made about the Income Fund to Plaintiffs. Defendant Financial West was aware or should have been aware of the falsity of the statements made to Plaintiffs concerning the Income

711?0421 2

Fund.  By virtue of its controlling position, Defendant Financial West is liable to Plaintiffs pursuant to Section 20(a) of the Securities Exchange Act of 1934 (15 U.S.C. § 78t(a)).

## Count VI -- Connecticut Uniform Securities Act Violations as to Both Defendants

93.    Plaintiffs incorporate by reference the above paragraphs 1 through 92 as if fully set forth herein.

94.    Defendant Sahli, individually and as an agent of Defendant Financial West, engaged and participated in a course of conduct and conspiracy to conceal adverse material information about the Income Fund as set forth more fully in Paragraphs 9 through 54 this Complaint.  Defendant Sahli employed deceptive devices, schemes and artifices to defraud and engaged in acts, practices, and a course of conduct as alleged in an effort to assure Plaintiffs of certain facts about the Income Fund, which included the making of untrue statements of material facts.  Defendant Sahli engaged in actions, transactions, practices and courses of conduct that operated as a fraud and deceit upon Plaintiffs.

95.    Defendant Sahli engaged and participated in a course of conduct of dishonest and unethical practices as detailed herein in connection with the offer and sale of the afore-mentioned security.

96.    By virtue of the above-described conduct, Defendant Sahli has violated the Connecticut Uniform Securities Act (Conn. Gen. Stat. §§ 36b-4 and 36b-29(a)).

97.    Defendant Financial West, through its position of control and authority over Defendant Sahli, was able or should have been able to control, directly or indirectly, the statements made about the Income Fund to Plaintiffs.  Defendant Financial West was aware or

711704211 2

should have been aware of the falsity of the statements made to Plaintiffs concerning their Income Fund accounts. By virtue of its controlling position, Defendant Financial West is liable to Plaintiffs pursuant to Section 36b-29(c) of the Connecticut Uniform Securities Act (Conn. Gen. Stat. §36b-29).

WHEREFORE, Plaintiffs pray for the following relief:

(A) for judgment against Defendants Sahli and Financial West, and each of them, in such sums as are fair and reasonable to compensate Plaintiffs;

(B) for punitive damages;

(C) for Plaintiffs' costs and attorney's fees herein expended and incurred;

(D) for such other and further relief as the Court may deem just and proper; and

(E) Plaintiff demands a trial by jury.

Respectfully submitted,

**GREGORY A. BLOCH, ANNE C. BLOCH, GREGORY A. BLOCH, ANNE C. BLOCH as TRUSTEES FOR THE BENEFIT OF TRIAD ART GROUP, INC.'S EMPLOYEE STOCK OWNERSHIP TRUST, ANNE C. BLOCH as CUSTODIAN FOR THE BENEFIT OF LUCAS CRETZMEYER, TRIAD ART GROUP, INC., TRIAD ART GROUP PUBLISHING, INC.**

By:

Daniel L. Schwartz (ct 09862)
Patricia M. Canavan (ct 20597)
Day, Berry & Howard LLP
One Canterbury Green
Stamford, Connecticut 06901
Tel: (203) 977-7300
Fax: (203) 977-7301

**ATTORNEYS FOR PLAINTIFFS**

71170421 2

-18-

# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

GREGORY A. BLOCH, ANNE C. BLOCH,      :    CASE NO.: 3:03 CV 0368 (RNC)
GREGORY A. BLOCH, ANNE C. BLOCH AS    :
TRUSTEES FOR THE BENEFIT OF TRIAD    :
ART GROUP, INC.'S EMPLOYEE STOCK    :
OWNERSHIP TRUST, ANNE C. BLOCH AS    :
CUSTODIAN FOR THE BENEFIT OF LUCAS    :
CRETZMEYER, TRIAD ART GROUP, INC.,    :
TRIAD ART GROUP PUBLISHING, INC.    :
   :
          Plaintiffs,      :    JULY 22, 2003
VS.   

FINANCIAL WEST GROUP AND PATRICK
SAHLI,

          Defendants.

## PLAINTIFFS' FIRST REQUEST FOR PRODUCTION
## OF DOCUMENTS AND FIRST SET OF INTERROGATORIES TO
## DEFENDANTS FINANCIAL WEST GROUP AND PATRICK SAHLI

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, Plaintiffs, Gregory A. Bloch,

Anne C. Bloch, Gregory A. Bloch, Anne C. Bloch as Trustees for the Benefit of Triad Art Group,

Inc.'s Employee Stock Ownership Trust, Anne C. Bloch as Custodian for the Benefit of Lucas

Cretzmeyer, Triad Art Group, Inc., Triad Art Group Publishing, Inc. (collectively "Plaintiffs"),

hereby request that Defendant Financial West Group ("Financial West") and Defendant Patrick

Sahli ("Sahli") answer the following document production requests and interrogatories within thirty (30) days of the date of service hereof.

In answering these interrogatories and production requests, you must furnish all information available to you, including information in the possession of your attorneys, their investigators, or any person acting on your behalf, and not merely such information as is known of your own personal knowledge. If you cannot answer any part of these interrogatories in full after exercising due diligence to secure the information requested, so state and answer the remainder as fully as possible, stating whatever information or knowledge you have concerning the unanswered or partially answered portion.

These interrogatories and production requests are to be considered to be continuing; you are requested to provide, by way of supplementary answers, such additional information as you or any person acting on your behalf may obtain which will augment or modify your initial answers. Such supplementary responses are to be served upon the Plaintiffs within thirty (30) days of the receipt of such information.

## DEFINITIONS

(1)      **Communication.**  The term "communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

(2)      **Document.**  The term "document" is defined to be synonymous in meaning and equal in scope to the usage of this term in Federal Rule of Civil Procedure 34(a), including, without limitation, electronic or computerized data compilations.  A draft or non-identical copy is a separate document within the meaning of this term.

(3)      **Identify (with respect to persons).**  When referring to a person, "to identify" means to give, to the extent known, the person's full name, present or last known address, and when referring to a natural person, additionally, the present or last known place of employment. Once a person has been identified in accordance with this subparagraph, only the name of that person need be listed in response to subsequent discovery requesting the identification of that person.

(4)      **Identify (with respect to documents).**  When referring to documents, "to identify" means to give, to the extent known, the (i) type of document; (ii) general subject matter; (iii) date of the document; and (iv) author(s), addressee(s) and recipient(s).

(5)      **Parties.**  The terms "plaintiff" and "defendant" as well as a party's full or abbreviated name or a pronoun referring to a party mean the party and, where applicable, its

officers, directors, employees, partners, corporate parent, subsidiaries or affiliates. This definition

is not intended to impose a discovery obligation on any person who is not a party to the litigation.

(6)   **Person.**   The term "person" is defined as any natural person or any business, legal

or governmental entity or association.

(7)   **Concerning.**   The term "concerning" means relating to, referring to, describing,

discussing, evidencing or constituting.

(d)   The following rules of construction apply to all discovery requests:

(1)   **All/Each.**   The terms "all" and "each" shall be construed as all and each.

(2)   **And/Or.**   The connectives "and" and "or" shall be construed either disjunctively or

conjunctively as necessary to bring within the scope of the discovery request all responses that

might otherwise be construed to be outside of its scope.

(3)   **Number.**   The use of the singular form or any word includes the plural and vice

versa.

## PRODUCTION REQUESTS

Please produce the following documents:

1.   All documents concerning the information sought in and/or that Defendant relied
upon in preparing responses to Plaintiff's interrogatories.

2.   All agreements with the Plaintiffs, including, but not limited to, account opening
documents, cash, margin and option agreements, trading authorizations, power of attorney, or
discretionary authorization agreements, and new account forms.

3.    All notes by or on behalf of any representative of Financial West, including, but not limited to Patrick Sahli, including entries in any diary or calendar and phone messages, relating to any of the Plaintiffs' accounts since January 1, 2001.

4.    All forms RE-3, U-4, and U-5, including all amendments, all customer complaints identified in such forms, and all customer complaints of a similar nature against Defendant Patrick Sahli.

5.    All sections of the firm's Compliance Manual(s) related to the claims alleged in the Complaint, including any separate or supplemental manuals governing the duties and responsibilities of Defendant Patrick Sahli and supervisors, any bulletins (or similar notices) issued by the compliance department, and the entire table of contents and index to each such Manual.

6.    All examinations, inspections and/or records of disciplinary action (including but not limited to termination) taken against Defendant Patrick Sahli by Financial West, any regulator or employer for all sales practices or other improper conduct by Mr. Sahli.

7.    All exception reports and supervisory activity reviews relating to Patrick Sahli and/or the Plaintiffs' accounts from January 1, 1999 through the present, and all other documents reflecting supervision of Patrick Sahli and the Plaintiffs' accounts at issue.

8.    All commission runs and other reports or documents showing compensation of any kind relating to the Plaintiffs' accounts from January 1, 2001 through the present or, in the alternative, a consolidated commission report relating to the Plaintiffs' accounts at issue.

9.    All documents concerning any and all accounts held by Financial West in the name of or on behalf of any of the Plaintiffs, including but not limited to account statements and internal reviews, since January 1, 2001.

10.    All documents reflecting any communications by Financial West or its representatives or by Defendant Patrick Sahli with Gregory A. Bloch, Ann C. Bloch, any of their representatives or any of the Plaintiffs, from January 1997 to date.

11.    All documents concerning, describing or discussing in any manner the Goldman Sachs High Yield Income Fund, including, but not limited to research, investment analysis information, prospectuses and other offering documents and promotional information.

12.    All documents concerning all accounts Plaintiffs maintained with Defendants during the years 1997 to date including, but not limited to, monthly or periodic statements,

documents reflecting any and all transaction in such accounts and documents filled out and/or signed by Plaintiffs relating to such accounts.

13.    All documents prepared or used by Defendants relating to the transactions described in the Complaint, including but not limited to research, prospectuses, and other offering documents, and notes relating to those documents.

14.    All documents, tape recordings, transcriptions, or other reproductions of any statement or conversation of any person concerning any of the allegations in Plaintiffs' Complaint.

15.    All documents that support or tend to support Defendant's twenty defenses listed in Defendant's Answer, dated May 12, 2003.

16.    The personnel file, and all documents relating to the training, discipline and supervision of Defendant Patrick Sahli.

17.    All documents relating to any claims brought against Patrick Sahli and/or Financial West because of/as agent for Patrick Sahli's actions, including but not limited to documents relating to arbitrations and any informal complaints.

18.    All documents concerning communications between Defendant Financial West Group and Defendant Patrick Sahli relating in any manner to the Plaintiffs, Plaintiffs' accounts and/or Plaintiffs' investments.

19.    All documents concerning any checks or funds that were deposited into or became a part of any of Plaintiffs' accounts, including but not limited to checks or funds that were deposited or made a part of Plaintiff's accounts by Defendants, a third party and/or a person or entity other than any of the Plaintiffs.

20.    All documents concerning the investigation of the complaint made by the Plaintiffs regarding the representation made by Patrick Sahli regarding the guarantee of the principal investment and the guaranteed rate of return, including but not limited to notes of conversations between any Financial West representative and any of the Plaintiffs and/or between any Financial West representative and Patrick Sahli.

21.    All documents concerning all experts Financial West intends to call as witnesses during the hearing of this matter, including resumes and reports.

22.    All documents sent by Financial West to any expert or witness Financial West expects to call as a witness during the hearing of this matter or received from any expert or witness Financial West expects to call as a witness during the hearing in this matter.

## INTERROGATORIES

1.    Identify the person(s) answering these interrogatories and all persons assisting in the process of preparing or reviewing the answers thereto, and identify his/her title.  Specify by number those answers to which each such person(s) supplied information.

**RESPONSE:**

2.    Identify all persons who may have knowledge regarding the claims as alleged in the Complaint, identify his/her title, and identify those specific paragraphs of the Complaint of which each person has or may have knowledge.

**RESPONSE:**

3.     Identify all individuals that Defendant intends to call as a witness during the trial of this matter, including his/her title, and the substance of their testimony and/or knowledge.

**RESPONSE:**

4.     Identify all experts you intend to call as a witness during the trial of this matter and state the subject matter on which each such expert is expected to testify.

**RESPONSE:**

5.     Identify all persons involved in any manner in the decision to invest Plaintiffs' monies into the Goldman Sachs High Yield Income Fund.

**RESPONSE:**

6.    Identify all persons involved in any discussions or correspondence with Patrick Sahli concerning the investment of Plaintiffs' monies into the Goldman Sachs High Yield Income Fund.

**RESPONSE:**

7.    Identify all persons involved in any examination or investigation into the investment of Plaintiffs' monies into the Goldman Sachs High Yield Income Fund.

**RESPONSE:**

8.    Describe in detail the reason for the termination of Defendant Patrick Sahli as a registered representative of Financial West, and identify the persons involved in the termination decision.

**RESPONSE:**

71188449                                -9-

9.     Describe all training and supervision provided to Defendant Patrick Sahli by

Financial West.  In answering this interrogatory, provide the date of such training or supervision,

the topic and the person who provided such training or supervision.

**RESPONSE:**

10.     Since January 1, 2001, has any formal or informal complaint been made against

Defendant Patrick Sahli?  If the answer is in the affirmative, state for each such complaint:

a.     name and address of the complainant;

b.     name and address of the court or agency such complaint was lodged;

c.     nature of the complaint; and

d.     disposition of the complaint.

**RESPONSE:**

11.     Identify the person who investigated the complaint made by the Plaintiffs

concerning the representation made by Patrick Sahli regarding the guarantee of the principal

investment and the guaranteed rate of return, and summarize all conversations that person had with

any of the Plaintiffs.  In summarizing such conversations, provide the date of each conversation and all participants and/or witnesses to those conversations.

**RESPONSE:**

12.    Identify all sources of any deposits or payments made into the Plaintiffs' accounts from January 2001 through December 2002, including but not limited to the deposits or payments made into the Plaintiffs' account on or around May or June 2002, after Plaintiffs had liquidated $50,000.00 worth of shares from the Goldman Sachs High Yield Income Fund.  In responding to this interrogatory, identify the source of each of those deposits or payments, the date each deposit or payment was made, and the person who initiated each of those deposits or payments into Plaintiffs' account.

**RESPONSE:**

Respectfully submitted,

**THE PLAINTIFFS,
GREGORY A. BLOCH, ANNE C. BLOCH,
GREGORY A. BLOCH, ANNE C. BLOCH
AS TRUSTEES FOR THE BENEFIT OF
TRIAD ART GROUP, INC.'S EMPLOYEE
STOCK OWNERSHIP TRUST, ANNE C.
BLOCH AS CUSTODIAN FOR THE
BENEFIT OF LUCAS CRETZMEYER,
TRIAD ART GROUP, INC., TRIAD ART
GROUP PUBLISHING, INC.**

By _____
    Daniel L. Schwartz  (ct 09862)
    Patricia M. Canavan (ct 20597)
    Day, Berry & Howard LLP
    One Canterbury Green
    Stamford, Connecticut 06901-2047
    (203) 977-7300
    dlschwartz@dbh.com
    pmcanavan@dbh.com
    Its Attorneys

71188449

-12-

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

-----------------------------------------------------------X
GREGORY A. BLOCH, ANNE C. BLOCH,:
GREGORY A. BLOCH, ANNE C. BLOCH :
as TRUSTEES FOR THE BENEFIT OF     :
TRIAD ART GROUP, INC.'S EMPLOYEE :          CIVIL ACTION NO. 303-CV-0368 MRK
STOCK OWNERSHIP TRUST, ANNE C. :
BLOCH as CUSTODIAN FOR THE         :
BENEFIT OF LUCAS CRETZMEYER,    :          October 9, 2003
TRIAD ART GROUP, INC.,                      :
TRIAD ART GROUP PUBLISHING, INC.,:
                                                       :
                    Plaintiffs,               :
                                                       :
VS.                                                  :
                                                       :
FINANCIAL WEST GROUP, and.          :
PATRICK SAHLI,                               :
                                                       :
                    Defendants.             :
-----------------------------------------------------------X


## PROTECTIVE ORDER

**THE COURT** hereby orders and so orders the following Protective Order.

**IT IS HEREBY ORDERED** that any and all documents produced or to be produced by

any party to this action pursuant to any Subpoena, Interrogatory, Request for Production of

Documents and/or Request for Admission served by any other party, or testimony by way of

deposition, interrogatory or at trial or hearing for which the producing or testifying party asserts

a claim of proprietary, confidential, trade secret or otherwise sensitive commercial information

shall be subject to this Protective Order. These documents and testimony are referred to as

"Protected Documents" and "Protective Testimony" as hereinafter defined, and are to be

maintained in a confidential manner under the procedures as hereinafter set forth:

1

1.    The term "Protected Document" as used herein shall mean any document (including, but not limited to, any and all excerpts, digests, summaries or indices thereof) produced during discovery or at the trial of this action which is of a proprietary, confidential, trade secret, or of a commercially and/or competitively sensitive nature and is designated at the time of production by the producing party to be a "Protected Document."  A "Protected Document" shall continue to be a "Protected Document" until such time as the producing party expressly agrees in writing that the document is no longer considered to be a "Protected Document" or there is a finding by this Court that the document is not the proper subject of protection under the Federal Rules of Civil Procedure.

2.    The term "Protected Testimony" as used herein shall mean any testimony given by way of deposition, interrogatory, or at trial of this action (including, but not limited to, any and all excerpts, digests, summaries or indices thereof) which is of a proprietary, confidential, trade secret or of a commercially and/or competitively sensitive nature and is designated at the time the testimony is given and designated by the testifying party to be "Protected Testimony." "Protected Testimony" shall continue to be "Protected Testimony" until such time as the producing party expressly agrees in writing that the testimony is no longer considered to be "Protected Testimony" or there is a finding by this Court that the testimony is not the proper subject of protection under the Federal Rules of Civil Procedure.

3.    The documents designated and produced as "Protected Documents" and testimony designated as "Protected Testimony" shall be given confidential treatment as described below.

2

4.    Without further order of this Court, requesting or receiving parties may show "Protected Documents" and/or "Protected Testimony," and may disclose the contents thereof, **only** to the following persons (hereinafter referred to as "Qualified Persons"):

a.    Counsel of record in this action for requesting or receiving party;

b.    Regular employees of such counsel assigned to and necessary to assist such counsel in the preparation or trial of this action;

c.    Bona fide independent (i.e., not employed by or affiliated with a party or an affiliated company of a party) trial experts whom counsel, in good faith, reasonably anticipates will testify at trial as experts, and only to the extent necessary for preparation or testifying by that expert, subject to all of the terms and conditions of this Order, underlined provided that the names and employment affiliations of the experts are provided to all opposing counsel at least ten (10) days in advance of such disclosure, so that opposing counsel may have an opportunity to file an objection with the Court prior to such disclosure, in which case such disclosure shall not occur pending resolution by the Court;

d.    Provided that no disclosure shall be made to any person employed by any competitor of the party producing the "Protected Document" or giving "Protected Testimony" except upon further order of this Court;

e.    A court reporter retained by a party for deposition; and

f.    The Court and its personnel and any jury empanelled in this action.

5.    In the event that any person, expert or witness in this action or other "Qualified Person" is not willing to agree to be bound by this Stipulation and Order, the party seeking confidentiality may move the Court for an Order compelling the person to comply with this Stipulation and Order within fifteen (15) days of written notification that the person is unwilling to be bound.  This provision is without waiver to any party's right to move the Court for a ruling on whether it may use material designated as a "Protected Document" or "Protected Testimony"

pursuant to this Stipulation and Order in questioning an expert or witness who refuses to sign and is not compelled by the Court to maintain confidentiality.

6.      If a person, expert, witness or other "Qualified Person" refuses to acknowledge and be bound by this Stipulation and Order during the course of a deposition, the deposition may be adjourned so that the party seeking confidentiality may move for an order compelling the person, expert or witness to comply with this Stipulation and Order within twenty (20) days following the refusal to sign this Stipulation and Order.  The time for filing such a motion, when the refusal is during a deposition, is controlled by this paragraph.

7.      Every "Protected Document" copied for production (including excerpts, digests, summaries or indices thereof) shall be clearly marked as follows:

**Protected Document**
**Bloch, et al. v. Financial West Group, et al.**
**U.S. District Court for the**
**District of Connecticut**
**Civ. No. 303CV0368**
**SUBJECT TO PROTECTIVE ORDER**
**DO NOT COPY**

and shall remain at all times under the custody of counsel for the party or parties obtaining such documents, or their retained experts as defined in paragraph 4(c) above only.

8.      "Protected Testimony" shall be noted in the record at the start and the conclusion of "Protected Testimony and shall remain at all times under the custody of counsel for the party or parties obtaining such testimony, or  their retained experts as defined in paragraph 4(c) above only.  The parties agree that entire transcripts with attached exhibits shall be marked as "Protected Testimony" and that, within twenty (20) days of receipt of such transcripts, the party seeking confidentiality must affirmatively identify those portions of the transcripts which the party contends are subject to the Stipulated Protective Order.

4

9.      If a party contends in good faith that any document or testimony has been erroneously designated as a "Protected Document" or "Protected Testimony" and subject to this Order, the party and any "Qualified Persons" shall nevertheless treat the document as a "Protected Document" and the testimony as "Protected Testimony" unless and until the party either: (a) obtains the producing party's written permission to do otherwise, or (b) after first meeting and conferring with counsel for the producing party, obtains an order of the Court finding that the document or testimony is not subject to this Protective Order.

10.      "Protected Documents," the material contained therein and "Protected Testimony" shall not be used or shown, disseminated, copied or in any way communicated to anyone for any purpose whatsoever other than "Qualified Persons," as defined above.  Except as provided for in paragraph 4 above, the parties and "Qualified Persons" shall keep all "Protected Documents," the material contained therein and "Protected Testimony" confidential from all persons.

11.      Before being given access to any "Protected Document" or "Protected Testimony," each "Qualified Person" to whom a receiving party and/or anyone acting on the party's behalf including, but not limited to, the party's attorneys, agents and/or representatives, intend to deliver, exhibit, disclose or otherwise communicate and/or disseminate any "Protected Document," material contained therein or "Protected Testimony" in any form whatsoever, such "Qualified Person" shall be advised of the terms of this Order, shall be given a copy of this Order, and shall agree, in writing, to be bound by its terms by execution of the Affidavit attached hereto as Exhibit "A."  The party's counsel shall maintain a list of all "Qualified Persons" to whom any "Protected Document," material contained therein or "Protected Testimony" is provided, specifying the "Protected Document," material or "Protected Testimony" provided to

the "Qualified Person" and that list shall be available for inspection by the Court and by the producing party at any time.

12.     Counsel for a requesting or receiving party shall keep records of all copies of each "Protected Document" or "Protected Testimony" made and/or distributed, in whole or in part, or any summaries or excerpts thereof to "Qualified Persons."  Any copies so distributed shall be returned to the respective counsels immediately upon the completion of the "Qualified Person's" retention in this case.

13.     To the extent that any "Protected Document" or information obtained therefrom, is used in the taking of depositions, all such "Protected Documents" and information shall remain subject to the provisions of this Order, along with the transcript pages of the deposition testimony dealing with the "Protected Documents," "Protected Testimony" or information.  At the time any "Protected Document" is used in any deposition, the reporter shall be informed of this Order and shall be required to operate in a manner consistent with this Order, and the reporter shall the deposition transcript as "Confidential."  Any "Protected Documents" marked as exhibits shall be kept in a separate sealed envelope, with the envelope appropriately marked that the contents are subject to Protective Order.  In the event the deposition is videotaped, the original and all copies of the videotape shall be marked by the video technician to indicate that the contents of the videotape are subject to this Protective Order in substantially the same form as follows below:

> **This videotape contains confidential testimony used in this case and is not to be viewed or the contents thereof displayed, or revealed except by order of the Court, or pursuant to written stipulation of the parties.**

14.     All documents that are filed with the Court that contain any portion of any "Protected Document" or information taken from any "Protected Document" (in summary form

or otherwise) shall be filed in a sealed envelope, or other appropriate sealed container on which

shall be endorsed the caption of the litigation, and a notation that the contents are subject to this

Protective Order in substantially the same form as follows below:

> **This envelope is sealed and contains confidential information filed in this case by [name of party] and is not to be opened or the contents thereof displayed, or revealed except by order of the Court, or pursuant to written stipulation of the parties. This envelope shall not be opened without order of the Court and only by the Court's assigned courtroom deputy clerk and only in the presence of all counsel of record who, after reviewing the contents, shall return them to the Clerk in a sealed envelope or container.**

15.    No requesting or receiving party or "Qualified Person" who receives copies of

any "Protected Documents" or "Protected Testimony" or any part, portion, summary or excerpt

thereof produced in accordance with this Protective Order, is authorized to disseminate or

distribute in any manner, all or any part of the "Protected Document" or "Protected Testimony"

to any other person, firm, corporation or organization, without the prior written consent of the

producing party, or upon further order of this Court.

16.    That all documents, information, or other data disclosed by the producing party,

which are the subject of this Protective Order, shall be used solely for the purposes of this

litigation and not for any other purpose, including any business purpose or any other litigation,

mediation or arbitration.

17.     Within twenty (20) days from and after the conclusion of this litigation, including any appeals, either: (a) by compromise settlement, (b) by stipulated dismissal, (c) by entry of judgment, or (d) by conclusion of appeals, whichever shall occur first, copies of all "Protected Documents," "Protected Testimony" or other materials subject to this Protective Order shall be retrieved by the party who sought their production and shall be returned to counsel for the producing party, including all copies of all "Protected Documents," "Protected Testimony," excerpts, digests, summaries, indices or testimony relating thereto, in whatever form, including copies provided to experts, or any person, firm, corporation or organization obtaining the document as a "Qualified Person."

18.     No requesting or receiving party, their counsel or experts, shall under any circumstances sell, offer for sale, advertise, communicate, disseminate or otherwise publicize either the contents of "Protected Documents" or "Protected Testimony," or the fact that the requesting or receiving party has obtained confidential and/or privileged documents or testimony from the producing party.

19.     This Order shall be binding upon the parties hereto, upon their attorneys, and upon the parties and their attorneys' successors, executors, personal representatives, administrators, heirs, representatives, assigns, subsidiaries, divisions, employees, agents, retained experts, and the persons or organizations over which they have control.

20.     After termination of this litigation, including any appeals, the provisions of this Order shall continue to be binding, except with respect to those documents and information that become a matter of public record. This Court retains and shall have jurisdiction over the parties and recipients of the "Protected Documents" or "Protected

Testimony" for enforcement of the provisions of this Protective Order following termination of the litigation.

21.    If a party inadvertently produces "Protected Documents" or "Protected Testimony" not designated as such, it may redesignate such information by giving written notice to all parties that the production of such information without having been designated as "Protected Documents" or "Protected Testimony" was inadvertent. Upon receipt of such notice, all parties in possession of such information must stamp all such information as provided above. Any such inadvertent production shall not be considered a waiver of the terms and conditions of this Stipulation and Order.

22.    Neither the taking nor the failure to take any action to enforce the provisions of this Stipulation, nor the failure to object to any such action or omission, shall constitute a waiver of any claim or defense in the trial that any document or communication is a "Protected Document" or "Protected Testimony" or subject to any other privileges or is inadmissible for any other reason.


ORDERED this _____ day of October, 2003.


_____
D.J. KRAVITZ

9

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

```
-----------------------------------------------------------X
GREGORY A. BLOCH, ANNE C. BLOCH,  :
GREGORY A. BLOCH, ANNE C. BLOCH :
as TRUSTEES FOR THE BENEFIT OF       :
TRIAD ART GROUP, INC.'S EMPLOYEE :        CIVIL ACTION NO. 303-CV-0368
MRK
STOCK OWNERSHIP TRUST, ANNE C.   :
BLOCH as CUSTODIAN FOR THE            :
BENEFIT OF LUCAS CRETZMEYER,       :        October 9, 2003
TRIAD ART GROUP, INC.,                       :
TRIAD ART GROUP PUBLISHING, INC., :
                                                          :
                    Plaintiffs,                        :
                                                          :
VS.                                                       :
                                                          :
FINANCIAL WEST GROUP, and.            :
PATRICK SAHLI,                                  :
                                                          :
                    Defendants.                    :
-----------------------------------------------------------X
```

## **AFFIDAVIT**

STATE OF _____      )
                                                      ) SS.:
COUNTY OF _____)

        I _____, being of lawful age, do hereby depose and state as follows:

        1.      I do hereby acknowledge that I have received and read a copy of the attached Protective Order.

        2.      I understand the terms and conditions of the Protective Order.

        3.      I agree to be bound by the terms of the Protective Order, and will not reveal any "Protected Document" or "Protected Testimony" to any unauthorized person.

4.      I will return all "Protected Documents" or "Protected Testimony" to the producing party within ten (10) days after the producing party is no longer a party to this action or within ten (10) days after I am no longer employed by counsel of record, whichever event occurs sooner.

5.      I recognize that the producing party will be irreparably harmed by the dissemination of any "Protected Document" or "Protected Testimony."

6.      I understand that unauthorized disclosures of "Protected Documents" or "Protected Testimony" in violation of this Order shall constitute contempt of Court.

7.      I consent to the exercise of personal jurisdiction by this Court for enforcement of all terms of this Order.

FURTHER AFFIANT SAITH NOT.

This ____ day of _____, 2003.

(Name)

(Address, City, State, Zip)

(Telephone #)

(Affiliated Company)

Relationship to this lawsuit:

Subscribed and sworn to before me this ____ day of _____, 2003.

Notary Public

My Commission Expires:

11

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

-------------------------------------------------------------X
GREGORY A. BLOCH, ANNE C. BLOCH,:
GREGORY A. BLOCH, ANNE C. BLOCH :
as TRUSTEES FOR THE BENEFIT OF     :
TRIAD ART GROUP, INC.'S EMPLOYEE:      CIVIL ACTION NO. 303-CV-0368 MRK
STOCK OWNERSHIP TRUST, ANNE C.  :
BLOCH as CUSTODIAN FOR THE          :
BENEFIT OF LUCAS CRETZMEYER,     :      October 9, 2003
TRIAD ART GROUP, INC.,                    :
TRIAD ART GROUP PUBLISHING, INC.,:
                                                     :
                        Plaintiffs,               :
                                                     :
VS.                                                 :
                                                     :
FINANCIAL WEST GROUP, and            :
PATRICK SAHLI,                              :
                                                     :
                        Defendants.            :
-------------------------------------------------------------X

## ORDER OF CONFIDENTIALITY

IT IS HEREBY ORDERED as follows:

1.     In connection with discovery proceedings in this matter, any party from which discovery is taken may, by written notice or designation, designate any document, material or information, including information derived from such documents or material (collectively "material"), as "Confidential" under the terms of this Stipulation of Confidentiality (the "Stipulation").

2.     Any material to be designated "Confidential" may be *reasonably* so designated either by furnishing a separate written notice to the counsel for the party receiving such material at the time of production which identifies the material as Confidential, or by stamping the

material with the legend "CONFIDENTIAL" prior to production.   Stamping the legend "CONFIDENTIAL" on the cover of any multi-page document shall designate all pages of such document as Confidential, unless otherwise indicated by the producing party.  The parties will attempt to identify and stamp their confidential documents.  If not practicable, then they will designate such materials.

3.     Confidential material shall be used by the parties receiving it only for the purpose of the prosecution, defense or settlement of this proceeding entitled, <u>Gregory A. Bloch, Anne C. Bloch, Gregory A. Bloch, Anne C. Bloch as Trustees for the Benefit of Triad Art Group, Inc.'s Employee Stock Ownership Trust, Anne C. Bloch as Custodian for the Benefit of Lucas Cretzmeyer, Triad Art Group, Inc., Triad Art Group Publishing, Inc. v. FINANCIAL WEST GROUP, And PATRICK SAHLI</u>, U.S.D.C. District of Connecticut Civil Action No. 303-CV-0368 MRK, and for any appellate review, and for no other purpose.

4.     Confidential material may only be disclosed or made available by the parties receiving such material to "qualified persons" who shall, prior to the disclosure, agree to protect the confidentiality of the material so disclosed in accordance with this Stipulation, and who are defined to consist of:

(a)   the individual parties to this action;

(b)   in the case of the non-individual parties in this action, officers, directors, partners, and employees, if any, of such entities deemed necessary by counsel to aid in the prosecution, defense or settlement of this action;

(c)  counsel for a party and the paralegal, clerical and secretarial staff employed by such counsel;

(d)  experts and other consultants retained by such counsel in connection with this action to the extent deemed necessary to assist such counsel in the prosecution, defense or settlement of this proceeding;

(e)  any other person as to whom the parties in writing agree; and

(f)  witnesses in this proceeding.

5.     Nothing herein shall impose any restrictions on the use or disclosure by a party or witness of material obtained by such party or witness independent of discovery in this proceeding, whether or not such material is also obtained through discovery in this proceeding.

6.     If Confidential material is included in any papers to be given to the Court, such papers shall be labeled "Confidential" when filed.  The Court will be requested to treat documents marked "Confidential" as such.

7.     Any party may consent to have any material previously designated by it as "Confidential" pursuant to this Stipulation removed from the scope of this Stipulation by so notifying counsel in writing or by so stating on the record at any trial.  Nothing contained in this Stipulation shall prevent any party from disclosing its own Confidential material as it deems appropriate.

8.     In the event that any Confidential material is used in any trial and/or mediation session in this proceeding, it shall not lose its confidential status through such use.

Dated: New York, New York
        October 9, 2003

So Ordered:

_____